8 A.3d 866

**BAYADA NURSES, INC., Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2009.

Decided Nov. 17, 2010.

530

Thomas G. Collins, Harrisburg, Nicole L. Borda, Buchanan Ingersoll & Rooney, P.C., for Bayada Nurses, Inc.

Stephen Murray Schmerin, Pittsburgh, Kathryn McDermott Speaks, Jane Pomerantz, James A. Holzman, Harrisburg, PA Department of Labor & Industry, for Department of Labor and Industry.

Laura J. Lifsey, Joshua P. Rubinsky, Brodie & Rubinsky, P.C., for appellee amicus curiae, AARP PA AFL–CIO & Service Employees International Union.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice TODD.

A provision of the Pennsylvania Minimum Wage Act of 1968 (the "Act") [1] exempts from the statute's minimum wage and overtime requirements employment for "[d]omestic services in or about the private home of the employer." 43 P.S. § 333.105(a)(2). A regulation promulgated by Appellee, Pennsylvania Department of Labor and Industry (the "Department"), defines "domestic services" as "[w]ork in or about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer's pursuit of a trade, occupation, profession, enterprise or vocation." 34 Pa. Code § 231.1(b). In this direct appeal, we consider initially the doctrines of ripeness and exhaustion of administrative remedies to determine whether this matter is justiciable. We then address the issues of whether the Department's application of its regulation is reasonable and whether a third-party agency employer may benefit from the "domestic services" exemption from the Act's overtime requirements. For the reasons that follow, we determine this matter is justiciable, uphold the Department's regulation, and conclude that a third-party agency employer does not qualify for the domestic services exemption, and, therefore, must pay its employees overtime. Thus, we affirm the order of the Commonwealth Court.

## I. BACKGROUND

Appellant Bayada Nurses, Inc. ("Bayada") is a Pennsylvania corporation with its principal office located in Moorestown,

1. Act of January 17, 1968, P.L. 11, No. 5, as amended, 43 P.S. § 333.101–333.115.

New Jersey. Bayada has approximately 38 offices and employs over 1,000 individuals in the Commonwealth. It offers home care services, ranging from skilled nursing and personal care to rehabilitation and therapy for pediatric, adult, and geriatric clients. In order to provide these services, Bayada employs licensed practical nurses, registered nurses, and home health care aides ("aides"). Bayada's aides, who are the focus of this litigation, assist their clients in performing activities associated with daily living and provide general companionship. Bayada pays these aides an hourly rate, with each hour of service billed to the client. Bayada, however, does not pay its aides overtime.

On September 27, 2005, the Department notified Bayada that an audit of its payroll records would be conducted based on information "that possible discrepancies *may* exist in the manner payment is made to [Bayada's] employees with regard to the Minimum Wage and Overtime Law." Letter, 9/27/2005 (Exhibit B to Petition for Review) (emphasis in original). The Department requested Bayada to examine payroll records for a period of two years with regard to compliance with the Act, and to compile any information in audit format. *Id.* The focus of the Department's inquiry related to Bayada's payment of overtime to its aides. The Department took the position that, pursuant to its regulation, Bayada was not entitled to the domestic services exemption from overtime requirements. In January 2006, Bayada responded to the Department's request, claiming that it was entitled to the domestic services exemption, and, after additional meetings, and further correspondence between the parties, the Department notified Bayada on March 22, 2007 that the audit would proceed. Evidently, to date, however, the Department has not audited Bayada.

On October 2, 2007, Bayada filed a petition for review in the nature of a complaint for declaratory judgment in the original jurisdiction of the Commonwealth Court. In its petition, Bayada challenged the validity of the Department's regulation which, according to Bayada, improperly limited the application of the domestic services exemption set forth in the Act.

Specifically, Bayada maintained that the Act makes no distinction between domestic services provided to a householder by a direct and sole employee of the householder and domestic services provided to a householder by employees of a home health care agency (or third party) at the request of the householder. According to Bayada, the language of the Act is consistent with the same exemption provided in the federal Fair Labor Standards Act ("FLSA"),[2] which does not prohibit an exemption for agency employment. Bayada contended the two statutes should be interpreted *in pari materia*, and that the federal approach should govern, permitting agency employers to benefit from the domestic services exemption. Therefore, Bayada asserted that the Department's regulation does not reflect a reasonable interpretation of the Act and that it is void to the extent it denies third party agency employers, such as Bayada, the benefit of the domestic services exemption.

Furthermore, Bayada argued the Department's regulation prohibits recognition of a joint employer relationship. Specifically, Bayada submits that its clients control its aides. As its aides are "under the total discretion and control of the client while performing services in the client's home," the client is a joint employer with Bayada. Petition for Review at 17, ¶ 73. As a joint employer, Bayada asserted it should enjoy the benefit of the exemption. Moreover, Bayada offered the policy concern that, if the regulation is enforced, thus denying agency employers the domestic services exemption, the cost of such services will increase and clients will be forced either to reduce the number of hours of service the clients will receive or use additional aides "in their homes at great inconvenience, hardship and burden." *Id.* at 18, ¶ 83.

Ultimately, Bayada sought a judgment declaring (1) the definition of domestic services found in the regulation to be inconsistent with the Act and void to the extent it denied agency employers the domestic services exemption; (2) Bayada's clients are employers for purposes of the Act, such that Bayada and its clients may take advantage of the domestic

2. 29 U.S.C. §§ 201–219.

services exemption; and (3) the domestic services exemption should be interpreted consistent with the FLSA. *Id.* at 20.

On November 2, 2007, the Department filed preliminary objections in the nature of a demurrer, based upon the legal insufficiency of the pleading. Pa.R.Civ.P. 1028(a)(4). Specifically, the Department contended Bayada's petition contained no specific allegation that the Department's regulation was illegal, that the Department lacked the authority to issue the regulation, or that any illegality existed in the regulatory promulgation process. Moreover, the Department urged that its regulation was consistent with, and a reasonable and proper interpretation of, the Act; and that the Pennsylvania legislature and the Department are not bound by the FLSA and may impose stricter requirements than those found under the federal statute. Thus, the Department requested the Commonwealth Court to grant its demurrer.

The Commonwealth Court first determined that the Act does not define the term "domestic services," but concluded the Department was within its granted power and in accordance with proper procedures when it adopted its regulation defining the term. Applying principles of statutory construction, the court found that the regulation tracked the meaning of the Act's domestic services exemption and was reasonable. The court also rejected Bayada's argument that the domestic services exemption in the Act should be construed *in pari materia* with the FLSA, which would allow third-party agency employers to benefit from the exemption for employees, finding the domestic services exemptions under the Act and the FLSA to be substantially different, and that the FLSA did not preempt state regulation of wages and overtime if the state's standards are more beneficial to workers. Finally, the court rebuffed Bayada's assertion that its household clients were "joint employers," reasoning that, even taking as true all of Bayada's allegations regarding its clients' right to control the aides, Bayada failed to demonstrate the requisite control necessary to find a joint employer situation. Thus, the Commonwealth Court sustained the Department's preliminary ob-

jections in the nature of a demurrer and dismissed Bayada's petition for review.

Judge Pellegrini, joined by Judges Cohn Jubelirer and Leavitt, dissented. The dissenters concluded the matter was not ripe for review, and that Bayada's pre-enforcement challenge was improper. Bayada appealed the Commonwealth Court's determination.

We granted oral argument, and in addition asked the parties to provide supplemental briefing on the issue of whether the appeal was ripe for review under *Arsenal Coal Co. v. Dep't of Envtl. Res.*, 505 Pa. 198, 477 A.2d 1333 (1984).[3] Bayada raises the following issues for our review:[4]

1. Whether Bayada should have been afforded an opportunity to create a factual record on the critical issue of whether it jointly employs the Home Health Aides at issue in concert with its householder clients where Bayada has pled the requisite facts necessary to establish such joint employment relationship?

2. Whether Bayada is entitled to the benefits and protections of the "domestic services exemption" if it can establish a joint employment relationship between itself and its household clients with respect to the Home Health Aides at issue?

3. Whether the Department's current application of the Minimum Wage Act and its Regulation to exclude agency

3. We have jurisdiction over this matter pursuant to Section 723(a) of the Judicial Code which provides that the Pennsylvania Supreme Court "shall have exclusive jurisdiction over appeals from final orders of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a magisterial district judge or another government unit." 42 Pa.C.S.A. § 723(a).

4. The question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible. *MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 124, 674 A.2d 1050, 1054 (1996). In reviewing a lower court's decision to grant a demurrer, our Court's standard of review is *de novo. Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 480 n. 4, 905 A.2d 462, 468 n. 4 (2006).

employers from the benefits and protections of the "domestic services exemption" is unreasonable and in direct conflict with the express terms of both the Minimum Wage Act and the Department's own Regulation?

4. Whether Bayada should be afforded the opportunity to amend its Petition to address any lack of specificity on which the Commonwealth Court based its dismissal of the Petition?

Bayada Brief at 5.

## II. JUSTICIABILITY

Before we address Bayada's issues on appeal, we must address a threshold issue, and one on which we ordered supplemental briefing: whether this appeal is ripe for our review in light of our decision in *Arsenal Coal.*

As noted above, the dissenters found the matter not ripe for review and found a pre-enforcement challenge to be improper. More specifically, the dissenters opined that Bayada had suffered no injury, as no audit has taken place, and no fees have been assessed against it. Thus, the dissenters concluded the matter was not ripe for review. Related thereto, according to the dissenters, an administrative remedy was available, and, because Bayada failed to utilize such remedy, they believed the proper disposition of the matter was the dismissal of Bayada's petition for review. The dissenters acknowledged the exception to the requirement of the exhaustion of administrative remedies articulated in *Arsenal Coal,* noting a pre-enforcement challenge to a regulation was approved therein because the effect of the challenged regulation was direct and immediate and a lengthy administrative process would result in ongoing uncertainty in the day-to-day business operations of the industry. Yet, finding the regulation challenged by Bayada was adopted in 1977, the dissenters reasoned a regulation of such vintage could not cause the requisite "ongoing uncertainty in the day to day business operations" required for the exception to apply. *Arsenal Coal,* 505 Pa. at 210, 477 A.2d at 1340. Therefore, according to the dissenters, Bayada's challenge to the 31–year–old regulation did not fall within

the *Arsenal Coal* exception to the general rule requiring exhaustion of administrative remedies.

Contrary to the position of the dissenters, both Bayada and the Department assert that these issues are justiciable. Specifically, Bayada refutes the dissenting judges' reasoning by first pointing to the Declaratory Judgment Act and noting that it extends to the Commonwealth Court the authority to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S.A. § 7532. Bayada offers that it initiated its action in the Commonwealth Court's original jurisdiction without advancing its challenge through an administrative proceeding, two years after the Department's initial notice of its intent to audit Bayada's payroll records and its then-recent change in its interpretation and application of the regulation. As the Department had not commenced enforcement proceedings in the ensuing two years, and apparently has not instituted proceedings against Bayada to date, Bayada asserts that it had no other choice but to bring a pre-enforcement challenge in the Commonwealth Court.

Additionally, Bayada contends that its petition for declaratory judgment falls within the exception to the requirement of exhaustion of administrative remedies as set forth in *Arsenal Coal.* Specifically, Bayada maintains that, in *Arsenal Coal,* our Court found that pre-enforcement review is at times appropriate "[w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, and the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement." 505 Pa. at 209, 477 A.2d at 1339. Furthermore, Bayada offers that according to *Arsenal Coal,* such direct and immediate impact of a regulation may be demonstrated where use of the administrative process "would result in ongoing uncertainty in the day-to-day business operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval." *Id.* at 210, 477 A.2d at 1339–40.

Applying the criteria articulated in *Arsenal Coal* to the facts *sub judice,* Bayada develops that the Department failed to

proceed with the audit or initiate any enforcement action against Bayada; thus, it has been placed in "administrative limbo on an issue of critical importance to its day-to-day operations due to the threats, but [sic] inaction, of the Department." Bayada's Supplemental Brief at 9. Furthermore, Bayada asserts the uncertainty of the Department's new interpretation, by which it has taken the position that agency employers, such as Bayada, must pay overtime to aides, is direct and immediate. Bayada emphasizes it had only two options: (1) continue operations ignoring the Department's new interpretation and risk penalties and fines; or (2) comply with what it believed to be the Department's erroneous interpretation and await judicial determination in subsequent litigation. According to Bayada, "willful noncompliance or capitulation" fails to constitute an adequate administrative remedy. *Id.* at 11. Furthermore, Bayada rejects the dissenters' conclusion that, because it was adopted 33 years ago in 1977, a regulation existing for that long could not cause uncertainty in the day-to-day business operations of an industry. Appellant points to our decision in *Ins. Fed'n of Pa., Inc. v. Cmwlth., Ins. Dep't,* 586 Pa. 268, 893 A.2d 69 (2006), involving a change in the Pennsylvania Insurance Department's interpretation of a statute, and in which we, by *per curiam* order, remanded the case for consideration on the merits, citing *Arsenal Coal.* Thus, Bayada contends pre-enforcement review of an existing statute or regulation is permissible where an agency has adopted a new interpretation of that law, and it is the new interpretation that is being challenged.

The Department largely echoes Bayada's arguments regarding justiciability, adding that other health care agency employers face this same uncertainty. The Department also offers that administrative remedies here are inadequate or unavailable, as administrative hearings are not available under the Act and that it enforces overtime claims in the judicial system. Thus, like Bayada, the Department concludes that Bayada's petition is ripe for review, and that its pre-enforcement regulatory challenge was appropriate.

■ Initially, we note that this appeal arises in the context of Bayada's filing of a petition for review under the Declaratory Judgments Act [5] which is remedial in nature and affords a broad basis for relief. As a general proposition, a party may obtain a declaration of existing legal rights, duties, or status of parties by filing a petition pursuant to the Declaratory Judgments Act. Furthermore, the purpose of the Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S.A. § 7541(a). Significantly, the statute specifically warns that the availability of declaratory relief shall not be limited by the provisions of 1 Pa.C.S.A. § 1504 (relating to statutory remedies as preferred over common law).[6] 42 Pa.C.S.A. § 7541(b). Indeed, our Court noted as early as 1925 that the enactment was designed to curb the courts' tendency to limit the availability of judicial relief to only cases where an actual wrong has been done or is imminent. *Kariher's Petition,* 284 Pa. 455, 463–64, 131 A. 265, 268 (1925).

■ While the right to relief under the Declaratory Judgments Act is broad, there are certain limitations upon a court's ability to make a declaration of rights. *Twp. of Derry v. Pa. Dep't of Labor and Indus.,* 593 Pa. 480, 485, 932 A.2d 56, 59–60 (2007) (*per curiam* ). Generally, our judicial system requires a real or actual controversy before it will embrace a matter for review and disposition. Our Court has noted, however, that, while we do not have a constitutional case or controversy requirement, as found in our federal system, "[s]everal discrete doctrines—including standing, ripeness, and mootness—have evolved to give body to the general notions of case or controversy and justiciability." *Rendell v.*

**5.** 42 Pa.C.S.A. §§ 7531 *et seq.*

**6.** 1 Pa.C.S.A. § 1504 provides:
 In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

*Pa. State Ethics Comm'n,* 603 Pa. 292, 307, 983 A.2d 708, 717 (2009) (citing *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), identifying standing, ripeness, mootness, and political question, as "doctrines that cluster about [the] Article III" case or controversy requirement).

The doctrine of ripeness, at issue in this matter, is a judicially-created principle which mandates the presence of an actual controversy. When determining whether a matter is ripe for judicial review, courts "generally consider whether the issues are adequately developed and the hardships that the parties will suffer if review is delayed." *Twp. of Derry,* 593 Pa. at 485, 932 A.2d at 60. In the context of administrative law, the basic rationale of ripeness is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and to protect state agencies from judicial interference until an administrative decision has been formalized and its efforts felt in a concrete way by the challenging parties. *Gardner v. Dep't Envtl. Res.,* 658 A.2d 440, 444 (Pa.Cmwlth.1995) (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

Related to the doctrine of ripeness, but distinct therefrom, is the requirement of exhaustion of administrative remedies. While ripeness arises from a concern not to become involved in abstract disputes, exhaustion is concerned with agency autonomy, and the desire that parties resort to the administrative process so as to ensure that agency decision making is not unduly disrupted. *Gardner,* 658 A.2d at 445. Thus, as a general proposition, litigants are required to exhaust adequate and available administrative remedies prior to resorting to judicial remedies. *County of Berks ex rel. Baldwin v. Pa. Labor Rel. Bd.,* 544 Pa. 541, 553, 678 A.2d 355, 361 (1996).

In *Arsenal Coal,* however, our Court recognized the availability of a pre-enforcement challenge in the regulatory context, and created an exception to the general rule requiring exhaustion of administrative remedies. In *Arsenal Coal,* 55

anthracite coal mine operators and producers sought to enjoin the Pennsylvania Department of Environmental Resources (the "DER") from implementing regulations promulgated by the Environmental Quality Board (the "Board") governing environmental performance standards for the surface mining of anthracite coal. The operators claimed that the regulations at issue were invalid because the Board had exceeded the authority delegated to it by the legislature in promulgating the challenged regulations. The DER filed preliminary objections, asserting that the Commonwealth Court was without jurisdiction to entertain the pre-enforcement challenge to the regulations, because the operators had not exhausted their available administrative remedies, which the DER averred consisted of challenging the implementation and enforcement of the regulations by it through an appeal to the Environmental Hearing Board. The Commonwealth Court declined to exercise its equitable jurisdiction, concluding there was an adequate statutory remedy to challenge the validity of the regulations at time of enforcement.

On appeal, our Court held that, where statutory remedies are unavailable or inadequate, a pre-enforcement regulatory challenge was appropriate where there was a direct and immediate regulatory impact on the governed industry, and a petitioner alleged it would suffer ongoing uncertainty in its day-to-day operations and would sustain substantial expense complying with the challenged regulations while it proceeded through the administrative process:

> Where the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement.

> We believe that the asserted impact of the regulations in the instant case is sufficiently direct and immediate to render the issue appropriate for our judicial review; the lengthy process by which the validity of the regulations will be addressed on a basis of application to the litigant would result in ongoing uncertainty in the day to day business

operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval.

505 Pa. at 209–10, 477 A.2d at 1339–40 (citations omitted).

As we more succinctly explained in *PPL Generation, LLC et al. v. Cmwlth. Dep't of Envtl. Prot.*, 604 Pa. 326, 346–47, 986 A.2d 48, 60–61 (2009), *"Arsenal Coal* broadly stated that 'the propriety of invoking the original equitable jurisdiction of the Commonwealth Court in a case seeking pre-enforcement review of a substantial challenge to the validity of regulations promulgated by an administrative agency is clear.' . . . [W]hen the challenged regulations have a 'direct and immediate' effect on the industry, a challenge may be brought pre-enforcement."

 We conclude that this matter is ripe, as the issues are adequately developed and there exist, as described below, hardships the parties will suffer if review is denied. Additionally, we conclude that this appeal falls squarely within the paradigm of *Arsenal Coal* and its progeny, and, thus, Bayada's pre-enforcement challenge is proper. The Declaratory Judgments Act's purpose to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" certainly embraces the type of dispute before us. 42 Pa.C.S.A. § 7541(a). Related thereto, the Declaratory Judgments Act "is to be liberally construed and administered." *Id.* Furthermore, we have before us the existence of an ongoing dispute, i.e., the Department's alleged change in interpretation of its regulation. Thus, we reject the dissenters' "staleness" assertion. Bayada is faced with the option of continuing its operations, and ignoring the Department's interpretation regarding overtime requirements and risk penalties and fines, including criminal sanctions, or complying with what it believes to be the Department's erroneous interpretation and awaiting a judicial determination in subsequent litigation, in the interim bearing the not insignificant cost of compliance. Declaratory judgment on this issue eliminates substantial expense and uncertainty in the day-to-day operations of Bayada and other health care providers in similar circumstances, as well as the lengthy, costly, and

inefficient piecemeal enforcement of the current interpretation of the Act. Thus, we hold that the Department's alleged change in interpretation of its regulation has a direct and immediate impact both upon Bayada and the home health care industry in general. Finally, although not in dispute in this matter, it would appear that administrative remedies are unavailable or inadequate, as the Department asserts overtime violations are enforced only through individual criminal or civil actions in courts or before district magistrates. 43 P.S. § 333.113. For these reasons, we conclude that this matter is ripe for our review and that Bayada's pre-enforcement challenge is proper, and, thus, we find this matter to be justiciable.

## III. ENTITLEMENT TO DOMESTIC SERVICES EXEMPTION

We now turn to the issue of whether Bayada may benefit from the domestic services exemption under the Act. Specifically, we first address the question of whether the Department's application of its regulation is reasonable. We then address Bayada's related contention that it is entitled to an opportunity to create a factual record or amend its petition for review.

Bayada argues that the Act exempts from its minimum wage and overtime regulations employment for domestic services in or about the private home of the employer. 43 P.S. § 333.105(a)(2). Bayada notes that, in 1977, the Department promulgated a regulation defining domestic services as work in and about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer's pursuit of a trade, occupation, profession, enterprise or vocation. Bayada asserts the identity of the employer is not relevant under the Act, contending the domestic services exemption is occupational in nature. According to Bayada, the exemption is applicable so long as the domestic services are performed for an employer in or about his or her private home in such employer's capacity as a householder. Bayada maintains the Department's opposition to the application of the domestic

services exemption is premised upon its contention that Bayada, and not its householder client, is the sole employer for purposes of the Act. According to Bayada, the Department's position ignores the possibility of joint employment which, Bayada contends, is in direct conflict with the broad definition of employer under the Act, the Department's own regulation, and the common law of Pennsylvania, which contemplates joint employment.

More specifically, Bayada argues that its householder clients share the key attributes of an employer within the statutory definition of the Act and under the common law economic realities test. Bayada offers that its householder clients (1) select and approve the individual employee who will be allowed into the client's home; (2) set the employee's hours of work; (3) control all aspects of the services provided in the home; and (4) retain the right to terminate the relationship. Thus, Bayada argues, its aides are jointly employed by Bayada and its householder clients. While Bayada submits the economic realities test, used to determine employer status, was satisfied in this matter, it suggests it is not the appropriate test. Rather, Bayada advocates that the borrowed servant doctrine is applicable to the circumstances in the present matter.

From this, Bayada extrapolates that, having established that the domestic services are provided in the home of Bayada's householder clients, as employers, the householder clients may benefit from the domestic services exemption, and, that the exemption applies to Bayada as well. Again, Bayada urges that the domestic services exemption is an occupational-based exemption, not dependent upon the identity of the employer. Likewise, due to the broad definition of employer, which includes any person acting directly or indirectly in the interest of an employer in relation to the employee, 43 P.S. § 333.103(g), Bayada contends it qualifies as an employer of the aides because it acts directly or indirectly in the interests of Bayada's householder clients in relation to the aides as employees.

Related thereto, Bayada also argues that the Department concluded erroneously that only a householder employer is entitled to an exemption. According to Bayada, the Department's approach would deny Bayada, as a joint employer, the exemption, which would conflict with the definition of employer, which includes those acting directly or indirectly in relation to any employee. Moreover, Bayada argues that no deference should be given to the Department's interpretation of the Act, because, here, the regulation is inconsistent with the statute itself. Finally, Bayada maintains that not permitting the exemption will harm those whom least can afford it. Bayada's householder clients are billed for each hour of service provided by an aide. The rate includes the aide's hourly rate of pay, and an additional amount to cover workers' compensation, insurance, taxes, and Bayada's overhead. According to Bayada, paying its aides overtime will directly impact (and increase) the amount Bayada charges its clients and may make the use of aides cost prohibitive. Bayada concludes that an increase in costs due to paying its aides overtime would "lead to less services being provided for Bayada's clients in financial distress and, in some cases, could lead to institutional care." Bayada Brief at 52.

Furthermore, Bayada contends that the Department's current interpretation of the Act is in direct conflict with the FLSA. Specifically, Bayada avers the FLSA exempts from federal minimum wage and overtime provisions employment in domestic services in the homes of clients employed by third-party agencies. Section 213(a)(15) of the FLSA exempts "any employee ... employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15). Bayada points to the definition by the United States Department of Labor ("DOL") of "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3. Furthermore, Bayada offers

the DOL concluded that agency employment satisfies the exemption, 29 C.F.R. § 552.109(a), and that this regulation was upheld by the United States Supreme Court.

Bayada contends that, because the FLSA and the Act parallel one another, the federal and state laws should be read *in pari materia.* Furthermore, Bayada urges that the language under the FLSA and the Act are nearly identical, and that the language in both statutes focuses on the kind of work to be performed. Bayada concludes that the Department should interpret the language in the Act consistently with this occupation-based focus. Further, Bayada rejects the Department's position that the Act's "domestic services exemption" may be more stringent than the FLSA's exemption.

According to Bayada, the Commonwealth Court "misconstrued" the nature of Bayada's arguments below. Specifically, Bayada develops that they presented two related arguments before the court: (1) whether the regulation was unreasonable as applied, such that agency employers, like Bayada, were excluded from the exemption's benefits and protections in circumstances where the agency employer was jointly employing aides in concert with its householder clients; and (2) whether Bayada was in fact entitled to the exemption under a plain reading of the Act and the regulation to the extent it was jointly employing the aides in concert with its householder clients. Thus, Bayada maintains there is a controlling factual issue and the Commonwealth Court inappropriately made the factual determination that Bayada failed to demonstrate control by its household clients over the work of the aides. This, according to Bayada, is in spite of its allegation in its petition that "[Bayada's] clients have the right to select their [aides]; control the [aides'] hours of employment; direct and supervise the [aides'] tasks and activities during the workday; as well as to request the services of a new or alternative [aide]. In sum, the [aide] is under the total direction and control of the client while performing services in the client's home." Petition for Review at 17, ¶ 73. Therefore, Bayada asserts it was inappropriate for the Commonwealth Court to conclude that the allegations failed to demonstrate the requisite control by the

householder clients over the work performance of the aides. Rather, it contends its assertion regarding the control exercised by the clients is an issue of fact which should not have been addressed by the court at this stage. Bayada contends that "it appears" the Commonwealth Court concluded Bayada would be entitled to the domestic services exemption if it could establish control on the part of the householder client sufficient to give rise to a joint employment relationship. Thus, Bayada presses that it pled the requisite control to survive the Department's preliminary objections.

Finally, Bayada claims the Commonwealth Court failed to permit Bayada the opportunity to amend its petition for review in order to address any lack of specificity. According to Bayada, it pled the elements necessary to set forth a *prima facie* case, and it qualifies as a joint employer entitled to the domestic services exemption under the Act. If the Commonwealth Court found that Bayada failed to demonstrate control by its clients over the work performance of its aides, then, according to Bayada, the court should have permitted Bayada the opportunity to amend its petition.

The Department counters that a demurrer is appropriate. Specifically, the Department explains in great detail that the regulation was properly enacted as part of its rulemaking authority. According to the Department, the Act grants it broad powers to adopt regulations to carry out the Act's purpose of protecting employees from unreasonable and unfair wages and to safeguard the established minimum wage. 43 P.S. § 333.101. Indeed, the Department highlights that the Act specifically requires the Secretary and the Department to adopt regulations implementing its provisions "to˙ carry out the purposes of [the] act and to safeguard the minimum wage rates." 43 P.S. § 333.109.

Furthermore, the Department maintains that the regulation is reasonable. The Act provides an exemption from overtime and minimum wage requirements for "[d]omestic services in or about the private home of the employer." 43 P.S. § 333.105(a)(2). While the Act does not provide a definition of the term "domestic services," the Department avers that its

regulation gives meaning to the term consistent with the domestic services exemption contained in the Act. Moreover, the Department also offers that the language of the statutory exemption is clear and unambiguous, as it requires that the homeowner be the employer in order for the exemption to apply. In this vein, the Department avers that, where the interpretation of the agency charged with enforcing a statute is not clearly erroneous, the interpretation is entitled to great deference and is to be given controlling weight.

The Department also contends that, even if a joint employer relationship exists, Bayada cannot avoid the Act's overtime requirements. Contrary to Bayada's assertions, the Department stresses that the focus on the exemption is on the location of the work and the capacity of the employer. As noted by the Department, Bayada is not a householder who employs individuals for domestic services, and, thus, it is excluded from benefiting from the exemption which is expressly limited to the employer as a householder. Moreover, the Department argues that Bayada could not proffer any facts that would change its status to that of a joint employer. According to the Department, even taking all of Bayada's averments as true—that Bayada is responsible for paying the wages to its employees who perform services for its clients who are aged and infirm; pays its aides an hourly rate with each hour of service being billed to its client; screens the aides, conducts criminal background and reference checks; bills its clients for the aides' hourly rate of pay; and adds amounts in the billing for workers' compensation, insurance, taxes, as well as Bayada's overhead—Bayada cannot fall within the statutory or regulatory meaning of domestic services, regardless of whether or not a "joint employment" relationship exists.

The Department also stresses that the FLSA's provisions on domestic service exemption is not synonymous with the Act. Since the Act's exemption is more restrictive and narrowly construed in favor of the employee, the federal exemption does not preempt the Act. Specifically, the Department notes that the FLSA never incorporated the language of the

Act which exempts domestic services in or about "the private home of the employer." 43 P.S. § 333.105(a)(2). Similarly, the federal regulations under the FLSA exempt third-party agency employers .from paying overtime. 29 C.F.R. § 552.109(a). Thus, according to the Department, the federal law containing a third-party exemption is less restrictive than the Act, and its regulations reveal the differences between the two laws. As the language of the two statutes is not the same, similar interpretation is not mandated. The Department concludes that the FLSA preempts state law only where the state law is less beneficial to employees, and, thus, the federal statute establishes a national floor under which wage protections cannot drop, but more generous state employee protections are not precluded.

The Department takes the position that, because the Commonwealth Court properly granted its demurrer, based upon Bayada's factual averments and the legal arguments presented, a remand would be improper. The Department avers Bayada failed to request to amend its pleadings before the Commonwealth Court. The Department points to Pa.R.Civ.P. 1028(c)(1) which provides a party may file amended pleadings within twenty days after the service of a copy of preliminary objections, but notes Bayada did not avail itself of this opportunity. Furthermore, the Department maintains amendment is inappropriate if a party is unable to state a claim upon which relief could be granted. Here, the Commonwealth Court found that, even assuming all facts pled by Bayada to be true, Bayada failed to state a legally sufficient claim.

Amicus AARP, the Pennsylvania AFL–CIO, and the Service Employees International Union all support the Department's legal arguments and add that, as a matter of policy, the failure to adequately compensate home health care workers, who provide services to older persons and persons with disabilities, will lead to an even greater shortage of these critical workers. According to Amici, the current shortage of such workers is exacerbated by the lack of competitive wages and the demanding nature of the work. Contrary to Bayada's assertions, Amici argue that, if wages do not improve, patients will suffer

the consequences of inadequate services, forcing some prematurely into institutional care. Amici maintain that, for those individuals able to secure home health care assistance, the high turnover rate which already plagues this type of work will diminish the quality and consistency of the care received. Finally, according to Amici, agency employers, like Bayada, are already paying minimum wage and overtime in other states without adverse effects.

As our analysis involves interpreting the Act's domestic services exemption, and the Department's regulation interpreting this exemption, we necessarily begin by considering the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501 *et seq.* The Statutory Construction Act is clear: the objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). Further, the best indication of the General Assembly's intent is the plain language of the statute. *Martin v. Cmwlth., Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see Commonwealth v. Conklin*, 587 Pa. 140, 152, 897 A.2d 1168, 1175 (2006). Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921(c). 1 Pa.C.S.A. § 1921(c); *Koken v. Reliance Ins. Co.*, 586 Pa. 269, 288, 893 A.2d 70, 81 (2006).

As the clearest indication of the legislature's intention is the words it has employed, we first direct our attention to the language of the domestic services exemption. As a general proposition, an employer must pay its employees a minimum wage plus overtime for hours worked over 40 hours per week.[7]

7. Section 333.104(a), (a.1), and (c) of the Act provides:

The Act provides certain exemptions, however, including an exemption for employment concerning domestic services. The relevant language in 43 P.S. § 333.105(a)(2) directs:

(a) Employment in the following classifications shall be exempt from both the minimum wage and overtime provisions of this act:

\* \* \*

(2) Domestic services in or about the private home of the employer.

*Id.*

In 1977, the Department promulgated a regulation interpreting the undefined term "domestic services." 34 Pa.Code § 231.1.[8] In so doing, the Department drew a distinction regarding the type of employer for which an employee had to work in order for the domestic services exemption to apply.

(a) Every employer shall pay to each of his or her employes wages for all hours worked at a rate of not less than:

\* \* \*

(8) Seven dollars fifteen cents ($7.15) an hour beginning July 1, 2007.

\* \* \*

(a.1) If the minimum wage set forth in the Fair Labor Standards Act of 1938 (52 Stat. 1060, 29 U.S.C. § 210 et seq.) is increased above the minimum wage required under this section, the minimum wage required under this section shall be increased by the same amounts and effective the same date as the increases under the Fair Labor Standards Act, and the provisions of subsection (a) are suspended to the extent they differ from those set forth under the Fair Labor Standards Act.

\* \* \*

(c) Employes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary: ... And provided further, That the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek.

43 P.S. § 333.104(a)(8), (a.1), (c).

8. Bayada does not challenge that the Department properly issued the proposed regulation, received public comment, and finally promulgated its regulation. Therefore, the regulation is presumed to be both reasonable and valid. 43 P.S. § 333.109; *Borough of Pottstown v. Pa. Mun. Ret. Bd.,* 551 Pa. 605, 712 A.2d 741 (1998).

Specifically, the work had to be performed for an employer in his or her capacity as a householder:

*Domestic services*—Work in or about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer's pursuit of a trade, occupation, profession, enterprise or vocation.

*Id.*

As noted above, in construing a statute, a reviewing court is to discern the intent of the legislature. Here, the plain and unambiguous statutory language of the Act sets forth two requirements to come within the domestic services exemption: (1) the worker must be providing domestic services in or about a private home; and (2) the employer must be of a particular capacity, i.e., an employer in whose home the work is being performed. Thus, the unambiguous language of the statute focuses on one type of employer—a householder.

The Department's regulation is consistent with this limited exemption for domestic services. The regulation draws from the statutory language and merely demarcates work for an employer in his or her capacity as a householder and work for an employer in his or her capacity of pursuing a trade or enterprise—such as, a third-party agency employer. Under the Department's regulation, working for the householder employer permits an exemption from overtime requirements. Working for a third-party agency employer does not. Therefore, we conclude that the Department's definition of domestic services as set forth in the regulation, which distinguishes between householder employers and third-party agency employers, is not in conflict with the Act, as it closely tracks the domestic services exemption contained therein, and is reasonable as it is entirely consistent with the General Assembly's intent regarding the scope of the domestic service exemption. *See Tire Jockey Serv. Inc. v. Dep't of Envtl. Prot.,* 591 Pa. 73, 108, 915 A.2d 1165, 1186 (2007) (finding regulation valid and binding on courts as long as it is adopted within the

agency's granted power, issued pursuant to a proper procedure, and is reasonable).

■ Furthermore, we do not find that the Act's limited exemption, or the Department's interpretive regulation, runs afoul of the federal wage and hour laws. Bayada urges us to look to federal law to permit it, as a third-party agency employer, to be exempt from paying its employees overtime. Bayada further asserts that the Department's regulation is in conflict with the FLSA, and, instead, should be read *in pari materia* with its federal counterpart. We, however, find Pennsylvania's domestic services exemption to be materially distinct from the federal exemption, and find the Commonwealth's more narrow exemption, which is more beneficial to our Commonwealth's employees, to be a permissible exercise of state regulation.

Specifically, in 1968, the Act exempted domestic service from overtime requirements. Six years later, in 1974, Congress amended the FLSA to provide for an exemption from minimum wage and overtime requirements for "*any* employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15) (emphasis added). It is plain that Congress did not incorporate the Act's verbiage which limited the domestic services exemption to work in or about the "private home of the employer." 43 P.S. § 333.105(a)(2). Moreover, the DOL in 1975 specifically permitted this exemption for third-party agency employers. 29 C.F.R. § 552.109(a).[9] Thus, from the above it becomes clear that the language of the two statutes is materially distinct, and, further, that the federal regulatory approach and our Commonwealth's regulatory approach have differed with respect to the scope of the domestic services exemption—with Pennsylvania's domestic services exemption

9. "Employees who are engaged in providing companionship services, as defined in § 552.6, and who are employed by an employer or agency other than the family or household using their services, are exempt from the Act's minimum wage and overtime pay requirements by virtue of section 13(a)(15)." 29 C.F.R. § 552.109(a).

under the Act being more limited, and, thus, more protective of the right of a worker to a minimum wage and overtime.

While the Act's exemption for domestic services is more limited than the federal exemption, it is permissible for a state to enact more beneficial wage and hour laws. Indeed, the federal statute establishes only a national floor under which wage protections cannot drop, but more generous protections provided by a state are not precluded. 29 U.S.C. § 218 (stating that the FLSA shall not subvert "any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under [the FLSA] or a maximum workweek lower than the maximum workweek established [by the FLSA]."); *Pac. Merch. Shipping Ass'n. v. Aubry*, 918 F.2d 1409, 1425 (9th Cir.1990). Courts confronting related issues have held that the FLSA does not prohibit state regulation of wages and overtime if the state's standards are more beneficial to workers. *See, e.g., Pettis Moving Co., Inc. v. Roberts*, 784 F.2d 439, 441 (2d Cir.1986); *Manliguez v. Joseph*, 226 F.Supp.2d 377, 388–89 (E.D.N.Y.2002).

Thus, the Commonwealth Court properly concluded that: the FLSA does not supersede state law; Pennsylvania may enact and impose more generous overtime provisions than those contained under the FLSA which are more beneficial to employees; and it is not mandated that state regulation be read identically to, or *in pari materia* with, the federal regulatory scheme. Thus, we reject Bayada's assertion that federal law compels a different result than that reached by the Commonwealth Court.

Accordingly, finding the Department's regulation to be reasonable and consistent with the intent of the General Assembly, and finding that that federal wage and hour law does not compel a different interpretation of the Act, we uphold the Department's regulation.

▪ Having concluded that the Department's regulation constitutes a valid exercise of its authority and that it is reasonable and consistent with the clear intent of the legisla-

ture, we address Bayada's further contention that it may enjoy the domestic service exemption if it is a joint employer with its householder clients. As noted above, Bayada asserts that its householder clients are joint employers with Bayada.

Drawing on the plain language of the statute, as well as the Department's regulation, we conclude that an employer may enjoy the domestic services exemption only if it is a householder. Again, the Act exempts employment for domestic services about "the private home of the employer." As noted above, the plain language of the exemption is based upon the providing of domestic services, the location of the work, *and* the capacity of the employer—work performed in the home of the employer, and only where the employer is the householder. Thus, the employer must be a householder to satisfy Pennsylvania's narrow exemption from paying overtime wages to the employee. Furthermore, the Department's regulation, which is entitled to deference, allows for an employer in his or her capacity as a householder to enjoy the exemption, but specifically prohibits third-party agency employers from benefiting from this limited exemption. As Bayada does not contend that it is a householder employer, under the clear and unambiguous statutory language used in the Act, as well as the Department's reasonable interpretation of the Act through its regulation, the domestic services exemption does not extend to Bayada. This is the case even if Bayada's household clients might otherwise qualify for the exemption.[10] Not permitting Bayada, as a third-party agency employer who is not a house-

10. This is also why Bayada's argument that, because it falls within the broad definition of "employer" as defined in the Act, it is entitled to the domestic services exemption as a joint employer with its householder clients, misses the mark. While the Act's definition of "employer" is broad, 43 P.S. § 333.103(g) (defining employer as including "any individual, partnership, association, corporation, business trust, or any person or group of persons, acting, directly or indirectly, in the interest of an employer in relations to an employee"), for an individual to qualify for the limited domestic services exemption, and for an employer to be exempted from complying with the otherwise mandatory overtime provisions of the Act, the individual must be working about the private home of the employer, i.e., the employer must be the householder in whose house the individual works. The issue before us is the scope of the domestic services exemption, and, by its terms, Bayada does not fall therein.

holder, the ability to deny its employees overtime pay is entirely in alignment with the limited nature of the domestic services exemption as set forth in the plain language of the Act and the Department's regulation.[11]

Finally, Bayada contends that it should be given leave to amend its complaint or is entitled to a remand to develop a factual record. Where it appears that the law will not permit recovery, the court may sustain preliminary objections in the nature of a demurrer. *MacElree, supra.* In making this decision, the court must accept as true all well pleaded material allegations and any reasonable inferences therefrom. However, a court need not accept as true conclusions of law, unwarranted inferences, allegations, or expressions of opinion. *Pa. State Lodge v. Dep't of Labor and Indus.*, 692 A.2d 609, 613 (Pa.Cmwlth.1997), *aff'd without opinion*, 550 Pa. 549, 707 A.2d 1129 (1998).

Here, taking all facts alleged by Bayada as true, we conclude that Bayada does not fall within the unambiguous language of the domestic services exemption or of the regulation defining domestic services—work in or about a private dwelling *"for an employer in his capacity as a householder."* 34 Pa.Code § 231.1 (emphasis added). As noted above, since Bayada makes no factual allegation that it employs its aides in its capacity as a householder, Bayada cannot fall within the plain meaning of the statute or the regulation, regardless of whether a joint-employer relationship can be established. Thus, because Bayada failed to set forth a legally cognizable claim for relief, remand for factual development would be inappropriate. Likewise, a court is not required to permit amendment of a pleading if a party is unable to state a claim on which relief could be granted. *Werner v. Zazyczny*, 545 Pa. 570, 584, 681 A.2d 1331, 1338 (1996). Therefore, we are satisfied that the Commonwealth Court properly granted the Department's demurrer and dismissed Bayada's petition for

11. As we have found that Bayada, in its capacity as a third-party agency employer, cannot satisfy the Act's domestic services exemption, we need not address its arguments concerning whether the economic reality test or the borrowed servant doctrine should govern joint employer status.

review, finding that Bayada failed to state a claim upon which relief could be granted, even assuming all of the factual averments contained in Bayada's petition were true, and that the court did so properly without leave to amend or for development of a factual record.

For the above-stated reasons, we affirm the order of the Commonwealth Court. Jurisdiction relinquished.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.