2017 PA Super 361

| | |
|---|---|
| WALDRON ELECTRIC HEATING AND COOLING, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DANIEL P. CASEBER AND MARGARET A. CASEBER | No. 161 WDA 2017 |

Appeal from the Judgment Entered January 20, 2017
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2014-790

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

OPINION BY MOULTON, J.:                         **FILED NOVEMBER 14, 2017**

Waldron Electric Heating and Cooling, Inc. ("Waldron Electric") appeals from the January 20, 2017 judgment entered in its favor in the Washington County Court of Common Pleas following a bench trial.  We affirm in part and reverse in part, and remand to the trial court for further proceedings.

Waldron Electric filed in Allegheny County a complaint in arbitration against Daniel P. and Margaret A. Caseber asserting claims of breach of contract and unjust enrichment.  The Casebers filed a consent motion to transfer the case to Washington County, which the trial court granted.  Following an arbitration award finding in favor of the Casebers, Waldron Electric appealed to the Washington County Court of Common Pleas.  On March 21, 2016, the trial court conducted a non-jury trial.

The trial court set forth the following facts:

Thomas Waldron, principal of [Waldron Electric], and a registered electrician, testified that on Saturday, September 8, 2012 he received a phone call from Daniel Caseber, one of the defendants, inquiring about surge and lightning protection. They briefly discussed [Mr. Caseber's] needs and then Waldron suggested a ball park figure for the work which [Mr. Caseber] rejected. Waldron suggested that he could make a house call to view the situation but that the charge for such a visit would be $65.00. [Mr. Caseber] agreed and Waldron went to the Caseber residence. After some discussion, the parties signed a contract which described certain work to be done by [Waldron Electric] for the total consideration of $870.00.[1] As is required by law, 73 P.S. § 517.8(b), the contract contained a right of rescission: "an individual-shall be permitted to rescind a contract without penalties within three business days of the date of signing". Waldron immediately set to work and on that day completed the job. He was paid and left.

[1] Nothing in the record suggests this work was done on an emergency basis.

On the following Monday, two days later and on the first business day after the contract was signed and the work performed, [Waldron Electric] received by certified mail a notice of cancellation, Waldron called [Mr. Caseber] and demanded return of the electrical components he had installed in [Caseber's] household wiring. [Mr. Caseber] said he offered the surge protector and lightning arrestor to Waldron in that phone conversation[,] and that he took those items to a subsequent hearing at the office of the Magisterial District Judge, and offered them to Waldron who refused to accept them. Waldron says that in the phone conversation he demanded the items, but [Mr. Caseber] denied him permission to come to the house, and that there was no offer of any components at the MDJ office. We accept [Mr. Caseber's] version of these events. [Waldron Electric] refunded [Caseber's] payment.

Trial Ct. Op, 1/6/17, at 1-2 ("Post-Trial Op.").

On March 21, 2016, the trial court entered a verdict in favor of Waldron Electric for $196, which included the $65 charge for the house visit and $131 for the cost of transferring the action from Allegheny County to Washington County. On March 31, 2016, Waldron Electric filed a motion for post-trial relief requesting that the trial court direct verdict in its favor on its unjust enrichment claim for damages equal to the reasonable value of the work performed. On January 6, 2017, the trial court denied the motion and directed the Prothonotary to enter judgment on the March 21, 2016 verdict. On January 20, 2017, Waldron Electric filed a praecipe for judgment on non-jury verdict, and judgment was entered. That same day, Waldron Electric filed a timely notice of appeal.

Waldron Electric raises the following issues on appeal:

> 1. Whether the Trial Court erred in considering and referencing the current state of [the Casebers'] electrical system, and in overruling [Waldron Electric's] Objection on the matter in its Memorandum Opinion in violation of its own Order of Court of March 21st, 2016?

> 2. Whether the Trial Court erred in its refusal to consider the reasonable value of the services performed by [Waldron Electric], despite section 517.7(g) of the Home Improvement Consumer Protection Act enumerating such a right, because [Waldron Electric] had followed all material sections of the Act?

Waldron Electric's Br. at 9.

Waldron Electric first challenges the admission of evidence regarding Mr. Caseber's attempt to return electrical equipment.

"Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Renninger v. A & R Machine Shop*, 163 A.3d 988, 996 (Pa.Super. 2017) (quoting *B & L Asphalt Indus., Inc. v. Fusco*, 753 A.2d 264, 270 (Pa. Super. 2000)).

In February 2016, Waldron Electric filed a motion to compel inspection. On February 26, 2016, the trial court granted Waldron Electric's motion and ordered that the Casebers permit Waldron Electric to inspect the electrical system within 10 days of the date of the order. Prior to trial, Waldron Electric filed a motion for contempt and sanctions based on, among other things, the Casebers failure to permit Waldron Electric to inspect the wire system. On March 21, 2016, following argument, the trial court granted the motion and ordered that the Casebers "may not present evidence of the current condition of the wiring in their residence." Order, 3/21/16.

Waldron Electric claims that, following this order, the trial court erred in allowing Mr. Caseber to testify as to his attempt to return the equipment installed by Waldron Electric and relying on this testimony in its post-trial opinion.

At trial, the following exchange occurred:

Q: Did you have a conversation with Mr. Waldron prior to the [magistrate district judge] hearing that has been mentioned today?

A: Well, in the office, he came in, and we tried to give him the surge protector, I had it in a Giant Eagle bag, and also the lightning arrester were both taken out.

Q: And what [did] Mr. Waldron say, if anything?

A: He said, "They're junk. I don't want them, they're junk."

. . .

Q: Did Mr. Waldron make any effort after November 9, 2012, about picking up the equipment?

A: No.

Q: What is the status of those two pieces of equipment presently, do you know?

A: Do you mean the ones I tried to give back to him?

Q: Right.

A: I have no idea. I gave them to you.

Q: Are they in your house?

A: No, sir.

Q: Are they installed in the circuit box?

A: No, sir.

Q: What did you do with the circuit box after you cancelled the – sent the – I should say three-day notice to Mr. Waldron?

A: I tried to find an electrician to come in and do it, and put another surge protector in, because I didn't want his stuff in there.

Q: Was the equipment installed by Mr. Waldron removed?

A: Yes

[WALDRON ELECTRIC' COUNSEL]: Your Honor, I'm going to object about any reference to the box, since we did not get to inspect it.

THE COURT: Well, that's true.

[CASEBER'S COUNSEL]: Well, I believe your Honor said that there was no discussion of any other work or

additional thing. I'm just talking about the two pieces of equipment.

THE COURT: Okay. The objection is overruled.

N.T., 3/21/16, at 55-57.

We conclude that the trial court did not abuse its discretion in allowing testimony regarding the attempted return of the two pieces of Waldron Electric's equipment. This testimony did not describe the house's wiring system or the status of the electric box. Rather, it described an attempted return of Waldron Electric's equipment, which was required under the notice of cancellation form.[1]

Waldron Electric next argues that, contrary to the decision of the trial court, section 517.7(g) of the Home Improvement Consumer Protection Act ("HICPA"), 73 P.S. §§ 517.1-517.18, permits a contractor to recover the

_____

[1] The notice of cancellation form states that:

> If you cancel, you must make available at your residence in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk. If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

Br. in Opp. to Mot. for Post-Trial Relief, Ex. B. This notice was admitted into evidence at trial. *See* N.T, 3/21/16, at 43.

reasonable value of services performed if the contract complied with section 517.7(a). Waldron Electric maintains that because the parties' contract complied with section 517.7(a), the trial court erred in refusing to consider whether Waldron Electric had established a claim for equitable relief.

When reviewing a trial court's interpretation of a statute, our standard of review is *de novo*, and our scope of review is plenary. *Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014). Our Supreme Court has stated:

> "[T]he objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature." *Bayada Nurses v. Dept. of Labor and Indus.,* 607 Pa. 527, 8 A.3d 866, 880 (2010) (citing 1 Pa.C.S. § 1921(a)). Generally, the best indication of the General Assembly's intent is the plain language of the statute. "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors,* 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citations omitted).

*Allstate Life Ins. Co. v. Commonwealth*, 52 A.3d 1077, 1080 (Pa. 2012).

Section 517.7 of HICPA provides:

> (a) Requirements.--No home improvement contract shall be valid or enforceable against an owner unless it:
>
>> (1) Is in writing and legible and contains the home improvement contractor registration number of the performing contractor.
>>
>> (2) Is signed by all of the following:
>>
>>> (i) The owner, his agent or other contracted party.

(ii) The contractor or a salesperson on behalf of a contractor.

(3) Contains the entire agreement between the owner and the contractor, including attached copies of all required notices.

(4) Contains the date of the transaction.

(5) Contains the name, address and telephone number of the contractor. For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(6) Contains the approximate starting date and completion date.

(7) Includes a description of the work to be performed, the materials to be used and a set of specifications that cannot be changed without a written change order signed by the owner and the contractor.

(8) Includes the total sales price due under the contract or includes a time and materials provision wherein the contractor and owner agree in writing to the performance of the home improvement by the contractor and payment for the home improvement by the owner, based on time and materials. If the contract includes a time and materials provision:

(i) The contractor shall provide an initial cost estimate in writing to the owner before any performance of the home improvement commences.

(ii) The contract shall state:

(A) The dollar value of the initial cost estimate for the services to be performed under the time and materials provision.

(B) That the cost of the services to be performed under the time and materials provision may not exceed 10% above the dollar value indicated in the initial cost estimate.

(C) The total potential cost of the services to be performed under the time and materials provision, including the initial cost estimate and the 10% referenced in clause (B), expressed in actual dollars.

(D) A statement that the cost of the services to be performed under the time and materials provision shall not be increased over the initial cost estimate plus a 10% increase without a written change order signed by the owner and contractor.

(9) Includes the amount of any down payment plus any amount advanced for the purchase of special order materials. The amount of the down payment and the cost of the special order materials must be listed separately.

(10) Includes the names, addresses and telephone numbers of all subcontractors on the project known at the date of signing the contract. For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(11) Except as provided in section 12, agrees to maintain liability insurance covering personal injury in an amount not less than $50,000 and insurance covering property damage caused by the work of a home improvement contractor in an amount not less than $50,000 and identifies the current amount of insurance coverage maintained at the time of signing the contract.

(12) Includes the toll-free telephone number under section 3(b).

(13) Includes a notice of the right of rescission under subsection (b).

**(b) Right of rescission.--**An individual signing a home improvement contract, except as provided in the emergency provisions of section 7 of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law, shall be permitted to rescind the contract without penalty regardless of where

the contract was signed, within three business days of the date of signing.

. . .

**(g) Contractor's recovery right.--**Nothing in this section shall preclude a contractor who has complied with subsection (a) from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner if a court determines that it would be inequitable to deny such recovery.

73 P.S. § 517.7 (footnotes omitted).

The trial court held that, because there was a valid and enforceable agreement that complied with section 517.7(a) of HICPA, Waldron Electric was limited to contract damages and did not have a right to seek recovery for "the reasonable value of services which were requested by the owner" pursuant to section 517.7(g). Post-Trial Op. at 3.[2] We disagree.

---

[2] The trial court relied on our decision in **Shafer Elec. & Constr. v. Mantia**, which held that a contractor could recover under section 517.7(g) where the contract failed to meet the requirements of section 517.7(a). 67 A.3d 8, 12-14 (Pa.Super. 2013), *aff'd* 96 A.3d 989 (Pa. 2014). The trial court reasoned, based on **Shafer**, that section 517.7(g) applied only where no valid contract existed, and in this case the parties had a valid contract. Post-Trial Op. at 3.

Our Supreme Court affirmed our decision in **Shafer Electric**, but on different grounds. It concluded that HICPA is silent as to the availability of common law remedies where a valid contract does not exist, and held that where a contract fails to meet the requirements of section 517.7(a), a contractor may seek recovery under common law equity theories, rather than under section 517.7(g) of HICPA. **Id.** at 996-97.

Regardless, the decisions in **Shafer** are inapposite. Unlike the contract at issue in **Shafer**, here the contract complied with section 517.7(a).

Under the plain language of section 517.7(g), a contractor who complies with section 517.7(a) is not precluded from asserting a claim for the reasonable value of services performed. This conclusion is supported by dicta in **Shafer**, where the Supreme Court noted that it is "self-evident and plain that Section 517.7(g) speaks only to the availability of remedies to a contractor who complies with section 517.7(a)." 96 A.3d at 996.

Here, the parties and the trial court all agree that the parties' contract complied with section 517.7(a). Post-Trial Op. at 3. Therefore, under section 517.7(g), because Waldron Electric "complied with subsection (a)," it is not precluded "from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner if a court determines that it would be inequitable to deny such recovery." We recognize that this plain-language reading of section 517.7(g) may provide contractors an incentive to complete work before the three-day rescission period ends in order to defeat, as a practical matter, the homeowner's three-day right of rescission. The result, however, is compelled by the statutory language.[3]

Accordingly, we conclude that the trial court erred in finding that Waldron Electric was barred from asserting a claim for the reasonable of value of services under section 517.7(g). We make no determination as to

---

[3] Moreover, we note that section 517.7(g) permits the trial court to deny recovery when such recovery would be inequitable.

whether Waldron Electric has established a right to recover any payment; that is, we make no determination as to the reasonable value of services or whether it would be inequitable to deny recovery to Waldron Electric.

Judgment affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judge Solano joins the opinion.

Judge Musmanno files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2017