IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bensalem Township, John M.     :
Chaykowski, Administrator William   :
Cmorey, Trustee     :
    :
       v.     :    No. 1053 C.D. 2021
    :    Argued: November 15, 2022
Samuel Karley,     :
             Appellant     :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT            FILED: January 3, 2023

      Samuel Karley (Karley) has appealed the May 27, 2021, order of the Court of Common Pleas of Bucks County (trial court) that denied his post-trial motion for judgment notwithstanding the verdict (judgment NOV) or for a new trial.[1] The underlying matter was a breach of contract action brought by Bensalem Township, John M. Chaykowski, and Administrator William Cmorey, Trustee (collectively, Township), against Karley. The trial court held that Karley breached his contractual obligation to remit his workers' compensation payments to the Township's pension plan, as required in Karley's severance agreement with the Township. Karley asserts that the trial court erred, *inter alia*, because the severance

---

[1] Because our analysis of the underlying issues leads to the same ultimate conclusion, we address Karley's post-trial motion, herein, simply as a "post-trial motion" or a "motion for judgment NOV," rather than as a "motion for judgment NOV *or for a new trial*." In this regard, "when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000).

agreement violated the statute governing municipal pensions. For the reasons that follow, we affirm the trial court's order.

On January 3, 2006, Karley began full-time employment as a Township police officer. The terms of his employment were governed by the collective bargaining agreement (CBA) between the Township and the Police Benevolent Association (Union). The CBA provided, *inter alia*, for a disability pension.

On September 17, 2010, while on duty, Karley sustained a back and neck injury, resulting in cervical radiculopathy. Despite his injury, he was able to return to work. However, approximately four years later, in November 2014, Karley exacerbated his 2010 injury while trying to restrain a suspect. As a result, he became permanently unable to perform his duties.

On August 13, 2015, Karley entered into a severance and general release agreement (severance agreement) with the Township. The severance agreement provided that Karley would receive a disability pension at the rate of 50% of his final average compensation, or $4,897.15 per month, effective October 16, 2015. The severance agreement also provided as follows:

> *The amount of Karley's monthly disability pension may be reduced by any amount of workers' compensation benefit received by Karley or which may in the future be received* by him. Karley has an affirmative duty to continue his workers' compensation claim, cooperate in the requirements of that claim, and inform the Township of the status of the claim and any changes. If workers' compensation benefits end or are changed in amount or otherwise, and Karley has complied in good faith with his obligations, the offset to Karley's disability pension will be eliminated or adjusted accordingly.

Reproduced Record at 251a (R.R. __) (emphasis added).

Thereafter, on November 1, 2017, the workers' compensation judge (WCJ) issued a decision, based on the stipulation of the parties, that Karley was

2

entitled to total disability compensation in the amount of $845 per week based on his average weekly wage of $2,318.39, as of the date of his injury. The disability compensation was awarded as of July 18, 2015. However, the weekly disability compensation amount of $845 was adjusted to account for Karley's disability pension. As explained by the Township's solicitor:

> The Plan Actuary has calculated that 37.1% of [Karley's] monthly pension represents employer contribution to the plan. Under the [Workers' Compensation] Act,[2] employer/insurer gets an offset in an amount equal to 37.1% of the pension. In this case, that comes out to $419.27/wk, reducing Karley's weekly WC payment to [$]425.73 (his TTD rate is $845/wk). WC is paying Karley $425.73 per week.

R.R. 322a (emphasis in original). Under the severance agreement, Karley was required to remit the $425.73 weekly compensation benefit to the Plan.

By letter of September 23, 2016, the Township's pension administrator advised Karley that he had improperly retained these workers' compensation payments instead of remitting them to the Township, as required by the severance agreement. The pension administrator instructed Karley that he "must immediately deliver [] a certified bank check, payable to the 'Bensalem Township Police Pension Fund,' in the amount of $26,292.59, by no later than Friday, September 30, 2016" and that if he did not, the Township would start "reducing [his] monthly pension benefit" to account for the workers' compensation payments owed to the Township. R.R. 256a.

On October 19, 2016, the Township initiated a civil action against Karley asserting claims of conversion, breach of contract, promissory estoppel, and unjust enrichment arising from his refusal to remit his workers' compensation

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2510.

3

payments to the Township. In response, Karley asserted counterclaims of conversion, unjust enrichment, mandamus, declaratory judgment, and a violation of the Pennsylvania Wage Payment and Collection Law,[3] as a result of the Township's demand for his workers' compensation payments. *See* Trial Court Opinion, 5/27/2021, at 2. The matter proceeded to trial on August 10 and August 11, 2020, and at its conclusion, the parties requested a declaratory judgment on the legality of the Plan's offset for workers' compensation. On December 23, 2020, the trial court entered a judgment in favor of the Township on breach of contract and conversion. However, because the Township had already recovered what was owed under the severance agreement by adjusting Karley's disability pension payments, the trial court did not order an award of damages.

Karley filed a motion for judgment NOV, which the trial court denied. The trial court observed that Karley's post-trial motion was untimely filed because it was not transmitted to the prothonotary within 10 days of the decision as required by the Pennsylvania Rules of Civil Procedure.[4] Nevertheless, the trial court addressed the merits of Karley's motion for judgment NOV as follows:

---

[3] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§260.1-260.45.

[4] The rules provide, in pertinent part:

> (c) Post-trial motions shall be filed within ten days after
>
>> (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or
>>
>> (2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

PA.R.CIV.P. 227.1(c). The trial court stated "the [m]otion was never filed with the [trial c]ourt. Rather, [Karley] emailed, and sent by mail, the [m]otion on January 4, 2021. On January 5, 2021, [Karley] filed the [c]ertificate of [s]ervice to which the [m]otion was attached, but the actual [m]otion itself was never filed as a separate entry on the [d]ocket." Trial Court Opinion, 5/27/2021, at 2-3.

4

[Karley] has set forth thirty-one separate alleged errors, which individually nit-pick the [d]ecision, but which ignore overriding legal principles which control this fact situation and this dispute. [Karley] was a police officer, who received the benefits of a contract negotiated by the [Union] in accordance with the specific law which controls collective bargaining agreements. [Karley] also entered into a Severance Agreement and a General Release, as well as a Pension Letter Agreement with the Township and the [Union]. Notwithstanding the clear unambiguous language of the various documents and the CBA, [Karley's] legal position is that one provision of these agreements is unfair, unlawful, [and] unacceptable. [Karley] would like the [trial court] to enforce all other aspects of the documents but carve out the section which relates to the Township's right to reduce pension benefits through an offset for workers' compensation benefits received by [Karley] for a work-related injury . . . . *[Karley] signed various contracts, accepted the benefits of the various contracts and agreements, but refused to account for workers' compensation payments that were paid to him.* As a result, the Township unilaterally deducted payments from monthly pension payments to reimburse the pension fund. . . .

Where parties enter into a valid contract, they are required to comply with its terms. If a contract [was] illegal, it is arguably void or voidable. Parties can either rescind a contract, or affirm a contract and recover damages, but they cannot do both.

Trial Court Opinion, 5/27/2021, at 7-8 (emphasis added). Denying Karley's motion for judgment NOV, the trial court entered judgment in favor of the Township and against Karley. It is from this order that Karley has appealed to this Court.

5

On appeal,[5] Karley raises three main issues with respect to the trial court's denial of his motion for judgment NOV.[6] First, he asserts that the trial court erred by denying his counterclaim for declaratory judgment in which he challenged the legality of the workers' compensation offset provisions in the Township's police pension ordinance and in the severance agreement. Second, he asserts that the trial court erred and abused its discretion by finding in favor of the Township on its breach of contract claim. Third, he asserts that the trial court erred and abused its discretion in holding that there had been "an event of conversion." Karley Brief at 45.

We begin with a review of the applicable statutes and principles of law.

The Municipal Police Pension Law, Act of May 29, 1956, P.L. (1955) 1804, No. 600, *as amended,* 53 P.S. §§767-778, commonly known as Act 600,

---

[5] "The proper standard of review for an appellate court when examining the lower court's refusal to grant a judgment n.o.v. is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict." *Adamski v. Miller*, 681 A.2d 171, 173 (Pa. 1996). A trial court's denial of a motion for judgment NOV will be set aside where there has been an error of law or an abuse of discretion. *Department of Transportation of Right-of-Way for State Route 00700, Section 21H, in the Borough of Bentleyville*, 264 A.3d 415, 423 (Pa. Cmwlth. 2021).

Our standard of review in a declaratory judgment action determines whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Yost v. McKnight*, 865 A.2d 979, 982 n.6 (Pa. Cmwlth. 2005).

[6] A motion for judgment NOV requests the court to direct a verdict in favor of the losing party despite a jury verdict to the contrary. *Department of Transportation of Right-of-Way*, 264 A.3d at 422-23. There are two bases upon which judgment NOV can be entered:

The first is where a movant is entitled to judgment as a matter of law because, upon reviewing the record and deciding all factual inferences adverse to the movant, the law nonetheless requires a verdict in his favor. The second is where the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.

*Menkowitz v. Peerless Publications, Inc.*, 211 A.3d 797, 804 (Pa. 2019) (internal citations omitted).

6

governs police officer pensions.  It authorizes the establishment of police officer pensions by boroughs, towns, townships and regional police departments, and it provides for their regulation and maintenance.  In 2002, the legislature amended Act 600 to authorize a disability pension for police officers who sustain service-related injuries.[7]  The amendment, known as Act 30, states as follows:

> In the case of the payment of pensions for permanent injuries incurred in service, *the amount and commencement of the payments shall be fixed by regulations of the governing body* of the borough, town, township or regional police department and *shall be calculated at a rate no less than fifty per centum of the member's salary at the time the disability was incurred*, provided that *any member who receives benefits for the same injuries under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 [. . .]) shall have his disability benefits offset or reduced by the amount of such benefits*.

Section 5(e)(1) of Act 600, 53 P.S. §771(e)(1) (emphasis added).  Prior to Act 30, municipalities were not required to pay police officers a disability pension.  Section 5(e)(1) mandates an offset from the disability pension for Social Security benefits, but it is silent in regard to an offset for workers' compensation benefits.

Offsets are also addressed in Section 204(a) of the Workers' Compensation Act, which states:

> (a) No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: Provided, however, That if the employe receives unemployment

---

[7] Act of April 17, 2002, P.L. 239, No. 30.

compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 [. . .]) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. *The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made* under sections 108 and 306, except for benefits payable under section 306(c). The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.

77 P.S. §71(a). In sum, the employer's payment of severance and a pension will reduce the amount of compensation benefits the employer must otherwise pay to a claimant for his work injury.

Section 450 of the Workers' Compensation Act[8] states, in relevant part, as follows:

(a) *Any employer and the recognized or certified and exclusive representative* of its employe *may agree by collective bargaining to establish certain binding obligations and procedures relating to workers' compensation:* Provided, however, That the scope of the agreement shall be limited to:

(1) benefits supplemental to those provided in sections 306 and 307;

---

[8] Added by Act of June 24, 1996, P.L. 350, No. 57.

(2) an alternative dispute resolution system which may include, but is not limited to, arbitration, mediation and conciliation;

(3) the use of a limited list of providers for medical treatment for any period of time agreed upon by the parties;

(4) the use of a limited list of impartial physicians;

(5) the creation of a light duty, modified job or return to work program;

(6) the adoption of twenty-four-hour medical coverage; []

(7) the establishment of safety committees; and

(8) a vocational rehabilitation or retraining program.

(b) Nothing contained in this section shall in any manner affect the rights of an employer or its employes in the event that the parties to a collective bargaining agreement refuse or fail to reach agreement concerning the matters referred to in clause (a). In the event a municipality and its police or fire employes fail to agree by collective bargaining concerning matters referred to in clause (a), nothing in this section shall be binding upon the municipality or its police or fire employes as a result of an arbitration ruling or award.

(c) *Nothing in this section shall allow any agreement that diminishes an employe's entitlement to benefits as otherwise set forth in this section.* Any agreement in violation of this provision shall be null and void.

77 P.S. §1000.6(a)-(c) (emphasis added). Section 450 authorizes collective bargaining about "obligations and procedures" related to workers' compensation benefits, but the parties cannot agree to diminish an employee's entitlement to workers' compensation benefits. *Id.* Stated otherwise, a union and public employer cannot, for example, agree to reduce the workers' compensation benefits required by law in exchange for an increase in salary. 77 P.S. §1000.6(c).

With this background, we turn to Karley's issues on appeal.

9

In his first issue, Karley argues that the offset provision for workers' compensation benefits in the Township's pension ordinance and in the severance agreement violates Act 600, which guaranteed him a disability pension at 50% of his time-of-injury salary. The offset imposed by the Township reduced his disability pension below the minimum required in Section 5(e)(1) of Act 600, 53 P.S. §771(e)(1). He also argues that the offset provision violates Section 450(c) of the Workers' Compensation Act, 77 P.S. §1000.6(c), which prohibits collective bargaining that purports to diminish a claimant's entitlement to workers' compensation.

As noted above, Act 600 provides that "any member who receives benefits for the same injuries under the Social Security Act . . . shall have his disability benefits offset or reduced by the amount of such benefits." Section 5(e)(1) of Act 600, 53 P.S. § 771(e)(1). However, there is no similar provision pertaining to workers' compensation benefits awarded "for the same injuries" received by a member. *Id*. Karley argues that absent express authorization in Act 600, the offset for workers' compensation in the Township's pension plan is unlawful because it deprives him of the mandatory minimum pension in the amount of 50% of his time-of-injury salary. The Township responds that Section 5(e)(1) mandates an offset for social security, but it leaves other offsets to the discretion of the municipality.[9]

The pension offset is provided both in the Township's pension ordinance and the CBA. The ordinance states that "[t]he [p]lan shall receive an offset for workers' compensation payment or social security disability benefits paid or payable to the [p]olice [e]mployee." ORDINANCE NO. 2004-07, 4.06(A)(3); R.R.

_____

[9] This would certainly be the case where a municipality chooses to establish a pension above the statutory minimum of 50% of the officer's time-of-injury salary.

10

230a.  The CBA that governed Karley's employment states, in pertinent part, as follows:  "Included in computing the monthly pension benefit payable by reason of a "service-related" disability are any monthly benefits paid or payable to the [p]olice [e]mployee under the [] Workers' Compensation Act . . . ."  Article 21G.4. of the CBA at 34-35; Supplemental Reproduced Record at 348a-49a. (S.R.R. __).[10]

Section 5(e)(1) of Act 600 establishes two mandates:  (i) a disability payment "no less than fifty per centum of the member's salary at the time the disability was incurred" and (ii) a reduction in the disability payment by the amount of benefits received "for the same injuries under the Social Security Act."  53 P.S. §771(e)(1).  Karley argues that the offset for workers' compensation caused his disability pension to fall below the 50% minimum.  On that basis, he asked the trial court to declare the ordinance and severance agreement unlawful.

The trial court declined to rule on Karley's cross-claim for declaratory judgment that the ordinance and the severance agreement violated the minimum pension required by Section 5(e)(1) of Act 600.  The trial court concluded it could not address the request for declaratory relief because the Union, which had negotiated the offset for workers' compensation in the CBA, was a necessary party to any declaratory judgment action.  Accordingly, the trial court lacked jurisdiction over Karley's cross-claim for declaratory judgment.

Karley's claim that the pension offset violated the Workers' Compensation Act was pursued in a penalty petition that was denied by a workers' compensation judge (WCJ).  In his decision of November 1, 2017, the WCJ held:

---

[10] PA.R.A.P. 2173 provides that the pages of the supplemental reproduced record shall be numbered in Arabic figures followed by a small b, *e.g.*, 1b, 2b, etc.  Here, the Township did not follow this numbering scheme; we use the numbering as it appears in the supplemental record.

11

> The issue of whether or not [Karley] is obligated to endorse his workers' compensation checks over to the pension plan involves a dispute with the Pension Administrator, not the Workers' Compensation Administrator. This WCJ has no jurisdiction over the Pension Administrator, who is not a party to this litigation. This WCJ notes that this issue is currently the subject of civil litigation in the Bucks County Court of Common Pleas.

WCJ's Decision, 11/1/2017, at 7, Finding of Fact 17; R.R. 283a. Karley did not appeal this decision.

Nevertheless, Karley contends the pension administrator's demand violates Section 450(c) of the Workers' Compensation Act, which states that "[n]othing in this section shall allow any agreement that diminishes an employe's entitlement to benefits . . . ." 77 P.S. §1000.6(c). We reject Karley's contention. His workers' compensation benefits were calculated strictly in accordance with Section 204(a) of the Act, using Karley's average weekly wage on the date of his injury and reducing it by 37.1% of his retirement disability. There was no "diminishment" that was not authorized by the Workers' Compensation Act,[11] and

---

[11] The Workers' Compensation Appeal Board has determined, in the matter of *Mark Kelly v. Bensalem Township*, Appeal No. A17-0501 (Workers' Compensation Appeal Board, July 10, 2018), that the Township's offset did not violate the Workers' Compensation Act. In this regard, the Board stated:

> [I]t is properly within the WCJ's jurisdiction to ensure the claimant is receiving the correct compensation benefit checks in accordance with the [Workers' Compensation Act] . . . . However, WCJs cannot have any control over what the claimant may do with these compensation benefits after they are properly issued and received by the claimant. The WCJ cannot be expected to control the behavior of [the] claimant or outside parties once compensation has been received, and cannot be expected to direct or limit the claimant's right to contract with outside parties in regard to these duly-issued checks.

*Mark Kelly v. Bensalem Township*, Appeal No. A17-0501 (Workers' Compensation Appeal Board, July 10, 2018), Board Opinion at 7-8; S.R.R. 370a-71a. Stated otherwise, the WCJ's job is limited to the proper calculation of workers' compensation benefits but not how the claimant directs those benefits to be spent.

the matter of what happens to a workers' compensation payment is beyond the purview of the Workers' Compensation Act, as explained by the WCJ in his decision of November 1, 2017.

The offset at issue here was expressly authorized by the pension plan ordinance. It was agreed to by the Union in the CBA and by Karley, personally, in the severance agreement. The trial court held that the CBA's provision on the pension offset for workers' compensation was binding on Karley. Even if the offset did not conform to Section 5(e)(1) of Act 600, the trial court explained that "parties may not avoid limitations in a CBA, claiming that it conflicted with the law, after they voluntarily negotiated and agreed to the contracted provisions." *Norcini v. City of Coatesville*, 915 A.2d 1243, 1246 (Pa. Cmwlth. 2007). We discern no error by the trial court in deciding the matter strictly on the basis of the terms of the severance contract and not deciding Karley's cross-claim for a declaratory judgment.

In his second issue, Karley contends that the trial court erred and abused its discretion by holding him in breach of contract. Karley argues that the Township "expressly waived its breach of contract and conversion claims," stating that the Township told the trial court that it had been "paid off" and was no longer "pursuing those counts." Karley Brief at 39. He contends that the trial court was obligated, instead, to rule on the request for declaratory relief. As explained, the trial court did not do so for the stated reason that the Union was an indispensable party to any litigation on whether the pension offset in the ordinance and the CBA violated Section 5(e)(1) of Act 600. The trial court confined its ruling to Karley's alleged violation of the severance agreement.

"The elements of breach of contract are (1) the existence of a contract, (2) a breach of the duty imposed by the contract and (3) damages resulting from the

breach." *Sewer Authority of City of Scranton v. Pennsylvania Infrastructure Investment Authority*, 81 A.3d 1031, 1041-42 (Pa. Cmwlth. 2013). Here, his severance agreement provided that Karley's service-connected disability pension would be offset by any workers' compensation benefits awarded to him. Karley refused to remit his lump sum payment of $26,292.59, in workers' compensation benefits, as specified in the severance agreement. Although the Township was able to recoup those monies by reducing Karley's disability pension payments, it was required to file suit because Karley refused to adhere to the terms of the severance agreement.

The trial court held that "[a]t the time the cause of action was pleaded, there were resultant damages; therefore, the cause of action was correctly pleaded and established." Trial Court Opinion, 5/27/2021, at 13. We discern no error in the trial court's conclusion that Karley breached the severance agreement with the Township.

In his third issue, Karley argues that the trial court erred and abused its discretion in finding "an event of conversion" had occurred. Karley Brief at 45. Karley argues that the Township waived its conversion claim just as it waived its breach of contract claim, by asking the court for a declaratory judgment.

Conversion is "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corporation v. Central-Penn National Bank*, 254 A.2d 637, 638 (Pa. 1969). As the trial court stated:

> [T]he language of the documents is clear and unambiguous. There has been no credible challenge, and in fact, it appears that [Karley] admits that the restitution taken by [the Township] as deductions made from pension payments [was] consistent with the language of the documents. In fact, during opening

14

statements, [Karley's] Counsel admitted the "language of the pension ordinance and the [CBA] says [the Township] can reduce or deduct." Therefore, the [trial court] did not err in finding there was a conversion when [Karley] took the workers' compensation benefits without accounting for same.

Trial Court Opinion, 5/27/2021, at 11 (internal citations omitted).

There is no merit to Karley's claim that the "event" of conversion did not take place. Although the Township recovered the converted monies, the "event" of conversion still took place.

Finally, we turn to Karley's subsidiary issues that relate to his three main issues. The trial court stated: "[Karley] has set forth [31] separate alleged errors, which individually nit-pick the [d]ecision, but which ignore overriding legal principles which control this fact situation and this dispute." Trial Court Opinion, 5/27/2021, at 7. Much the same may be said here.

The sub-issues raised by Karley need no direct response because they do not control the disposition of this appeal. In its May 27, 2021, opinion and order, the trial court summarized the overriding principles in the case as follows:

> [Karley] was a police officer, who received the benefits of a contract negotiated by the [Union] in accordance with the specific law which controls collective bargaining agreements. [Karley] also entered into a Severance Agreement and a General Release, as well as a Pension Letter Agreement with the Township and the [Union]. Notwithstanding the clear unambiguous language of the various documents and the CBA, [Karley's] legal position is that one provision of these agreements is unfair, unlawful, [and] unacceptable. [Karley] would like the Court to enforce all other aspects of the document but carve out the section which relates to the Township's right to reduce pension benefits through an offset for workers' compensation benefits received by [Karley] for a work-related injury . . . .

15

Where parties enter into a valid contract, they are required to comply with its terms. If a contract [was] illegal, it is arguably void or voidable. Parties can either rescind a contract, or affirm a contract and recover damages, but they cannot do both.

Trial Court Opinion, 5/27/2021, at 7-8. We agree.

Karley agreed to the terms of the severance agreement, and he breached that contract by retaining his workers' compensation benefits. It is that simple. Karley's additional arguments are non-dispositive surplusage and need not be further addressed.

For all the above-stated reasons, we affirm the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bensalem Township, John M. Chaykowski, Administrator William Cmorey, Trustee | : : : : | |
| v. | : : | No. 1053 C.D. 2021 |
| Samuel Karley, | : : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 3rd day of January, 2023, the May 27, 2021, order of the Court of Common Pleas of Bucks County, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita